**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CARLA MICHELE NELSON,**

     **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 3:20-CV-00586**

**ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered September 10, 2020 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 16, 17)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or for remand (ECF No. 16); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 17); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

<u>**Procedural History**</u>

1

The Plaintiff, Carla Michele Nelson, (hereinafter referred to as "Claimant"), protectively filed her application on December 5, 2017 (Tr. at 13, 222-227) alleging disability since January 5, 1991[1] because of "[b]ack injury – pulled muscles & nerves running down legs", "[a]rms hurt when using in normal activity", "[k]nees lock up", and "[s]everely depressed" (Tr. at 13, 250). Her claim was initially denied on March 26, 2018 (Tr. at 13, 107-111) and again upon reconsideration on June 15, 2018 (Tr. at 13, 120-126). Thereafter, Claimant filed a written request for hearing on June 25, 2018 (Tr. at 13, 127-129).

An initial administrative hearing was scheduled for June 7, 2019, however, it was postponed due to a recent submission of additional evidence (Tr. at 67-75). Thereafter, a supplemental hearing was held on October 31, 2019 before the Honorable Jerry Meade, Administrative Law Judge ("ALJ") (Tr. at 34-66). On December 5, 2019, the ALJ entered an unfavorable decision (Tr. at 10-33). On February 4, 2020, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 216-219). The ALJ's decision became the final decision of the Commissioner on August 5, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On September 8, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 13, 14) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 16), in response, the Commissioner filed a Brief in Support of Defendant's

---

[1] Claimant's counsel indicated during the administrative hearing that she wanted to amend her alleged onset date to November 27, 2017, her application date, however, the ALJ found the evidence of record indicates the application date is December 5, 2017. (Tr. at 13, 42-43, 234)

2

Decision (ECF No. 17). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant is considered a "younger person" during the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 25) Claimant has a high school education and attended special education classes. (Tr. at 251) Claimant has never worked. (Tr. at 250) She had been married for twenty years; her husband passed away in November 2017. (Tr. at 45-46)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. § 416.920.  If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c), which provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

**Summary of ALJ's Decision**

At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the application date of December 5, 2017. (Tr. at 15, Finding No. 1) At the second inquiry, the ALJ found that Claimant had the following severe impairments: obesity; osteoarthritis; status post left first MTP fusion and calcaneal bone auto graft; "mild" degenerative disc disease of the cervical spine; "minor" degenerative disc disease of the thoracic spine; lumbar spondylolisthesis; status post L5-L1 lumbar interbody fusion; sciatica; major depressive disorder; adjustment disorder; borderline intellectual functioning; and panic disorder without agoraphobia. (Id., Finding No. 2) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16, Finding No. 3) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work:

> She can occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. She can frequently balance and climb ramps and stairs. She can frequently reach overhead with both upper extremities. She must avoid concentrated exposure to extreme cold; wetness; vibrations; and hazards such as moving machinery and unprotected heights. She needs a sit/stand option at one-hour intervals. She can never operate foot controls with the left lower extremity. The claimant can understand, remember, and carry out one-to-three step tasks. She cannot perform jobs that require strict production quotas. She can have occasional changes in the work setting. She can frequently interact with the public, co-workers, and supervisors.

(Tr. at 18, Finding No. 4) At step four, the ALJ found Claimant has no past relevant work. (Tr. at 25, Finding No. 5) However, in addition to the immateriality of the transferability of job skills, based on Claimant's age, education, lack of work experience, and RFC, the ALJ determined that

6

Claimant is capable of performing other jobs that exist in significant numbers in the national economy. (Tr. at 25-26, Finding Nos. 6-9) Finally, the ALJ determined Claimant had not been under a disability since December 5, 2017, the application filing date. (Tr. at 26, Finding No. 10)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because he failed to properly consider the medical evidence and Claimant's testimony which critically impacted the RFC analysis. (ECF No. 16 at 5) Claimant recites numerous diagnoses of record provided by consulting examiners and her treating sources, which show that she is incapable of performing substantial gainful activity. (Id.) The ALJ should have accepted the testimony of the vocational expert who opined Claimant is incapable of substantial gainful activity if she were absent more than two days a day per month or off task more than 10% of the workday; the evidence and Claimant's testimony show that she would be absent or off-task in excess of acceptable tolerances. (Id. at 5-6) Claimant asks for reversal with an award for benefits, or for remand. (Id. at 6)

In response, the Commissioner asserts that Claimant has waived her argument on appeal because she failed to sufficiently develop her argument, as she provides neither supporting facts nor law to support it, only a bulleted list of diagnoses and a conclusion that she would be absent more than twice per month and off task more than ten percent (ECF No. 17 at 7). Regardless, the RFC assessment is supported by substantial evidence, and with respect to the diagnoses Claimant lists in her brief, the ALJ actually determined nearly all those impairments to be severe; the ALJ thoroughly examined the relevant records and determined Claimant's impairments were not disabling, but fashioned the appropriate RFC that reasonably accounted for all the functional

limitations stemming from her impairments. (Id. at 8-9) There is no basis for Claimant's contention that she would be absent more than twice a month from work or off-task more than ten percent of the workday, however, the ALJ considered the entire record, and no medical expert opined to greater restrictions than found by the ALJ. (Id. at 9) Finally, the Commissioner contends that substantial evidence supported the ALJ's decision and asks this Court to affirm. (Id. at 9-10)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Psychological Consultative Examiner Findings:

In February 2018, the agency referred Claimant to Emily E. Wilson, M.A. for a mental status examination. (Tr. at 391-397) Claimant reported that she was applying for disability because the muscles in her back affected the nerves in her legs and she could not walk and that in 1991 or 1992 she got hurt and a doctor determined she was totally disabled then. (Tr. at 391) Ms. Wilson noted Claimant was neatly and casually dressed and had average grooming and hygiene; she observed Claimant's posture and gait were within normal limits. (Id.)

Claimant denied symptoms of anxiety, and reported that she tries to stay busy, but if she sits too long her muscles lock up. (Tr. at 392) She reported symptoms of depression, but stated that taking walks helps with her manage her worries and depression. (Id.) She reported that hospice comes to her house once every two weeks to talk to her for an hour, and that it really helped. (Tr. at 393)

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Claimant reported that she took care of her husband for two years before he died. (Tr. at 394) Ms. Wilson noted that Claimant performs many activities of daily living independently, such as grooming, hygiene, chores, light cooking, shopping, handling finances; she used to mow the grass but then got someone else to do it because of her pain. (Id.) She obtained her driver's permit, but not her license because she is unable to afford a car. (Id.) She walks to her appointments if she can; she lives close to the grocery store and pharmacy. (Id.) She visits her mother-in-law and visits with her brother every other weekend; Ms. Wilson noted Claimant appears to be a very social and friendly person. (Id.)

Ms. Wilson found Claimant cooperative and interacted appropriately; her affect broad; below average insight; judgment and immediate memory within normal limits; recent memory below average; remote memory slightly below average; concentration below average; rapid pace; and persistence slightly below average. (Tr. at 394-395)

Ms. Wilson's assessment was borderline intellectual functioning and major depressive disorder, single episode, mild, with anxious distress. (Tr. at 395) Ms. Wilson determined Claimant's prognosis is good if she is able to obtain consistent and appropriate therapy for her depressive symptoms, but prognosis for her cognitive difficulty is poor given the chronicity of this diagnosis. (Id.) Ms. Wilson opined that if provided benefits, Claimant appears capable of managing her finances, but may need some assistance for more advanced financial decisions. (Id.)

Medical Consultative Examiner Findings:

In March 2018, Claimant was referred to Kip R. Beard, M.D. by the Agency for an internal medicine examination. (Tr. at 20, 410-417) Claimant reported neck, middle and lower back pain related to a prior injury that occurs throughout the day and that radiates into both legs; she stated

that she has weakness in her legs and aggravating factors include prolonged sitting, lying down or lifting, but no alleviating factors noted. (Id.) She also complained of joint pain in her shoulders and right knee since 1991 or 1992, with aggravating factors including physical movement and alleviating factors include ice. (Id.)

Claimant presented without ambulatory aids and appeared stable at station unassisted. (Id.) Dr. Beard observed her gait was stable, normal in pace and normal in appearance; that she could arise from a chair and step up and down from the examination table without difficulty. (Id.) Claimant was able to walk on the heels, on the toes, tandem walk and stand on one leg alone; she could fully squat with discomfort. (Id.) Dr. Beard found no edema, clubbing or cyanosis in Claimant's extremities. (Id.) Inspection of spinal curvature revealed normal curvature. (Id.) Range of motion testing was associated with pain in the cervical, thoracic, and lumbar spine; there was also cervical, thoracic and lumbar paraspinous muscle tenderness, and no paraspinous muscle spasm. (Id.) There was no leg length discrepancy; seated straight leg-raising test was to 90 degrees bilaterally with hamstring tightness; supine straight leg-raising was to 80 degrees bilaterally with hamstring tightness. (Id.) The shoulders revealed pain and tenderness without redness, warmth or swelling. (Id.) There seemed to be some slight crepitus at the left shoulder. (Id.) The elbows, wrists and hands were without pain, tenderness, redness, warmth or swelling. (Id.) Range of motion of the hands and fingers was normal; Claimant could button using both hands. (Id.)

Dr. Beard noted that Claimant's strength was preserved in both her arms and legs and was normal; her deep tendon reflexes were graded 2+ for the biceps, triceps, patella and Achilles; the spinal assessment revealed discomfort and range of motion abnormalities without radiculopathy or myelopathy; the joint assessment revealed slight crepitus at the left shoulder and areas of

discomfort and range of motion abnormalities without inflammatory arthritis. (Id.) In sum, Dr. Beard assessed cervicalgia, pain in the thoracic spine, low back pain, bilateral sciatica, sprain of the ligaments of the cervical, thoracic and lumbar spine, shoulder pain, bilateral primary osteoarthritis and right knee pain. (Id.)

Treating Source Opinion Evidence:

In a letter dated September 21, 2018, Brandon K. Lilly, M.D., stated he had been treating Claimant since January 2018 and that she is diagnosed with major depressive disorder, moderate, with anxious features; adjustment disorder with anxiety and depression; and insomnia. (Tr. at 25, 418) He stated that Claimant also recently established with a therapist in his clinic to help manage these conditions in addition to medications. (Id.)

Recent Treating Source Evidence:

The record indicates that Claimant received treatment from Alistair T. Hoyt, M.D., from September 2018 through April 2019 for her back pain. (Tr. at 479-541) An MRI of the lumbar spine from January 2019 revealed a grade 2 spondylolisthesis at L5-S1 with severe degenerative disc narrowing; neural foraminal compromise on the right; underlying multilevel degenerative disc disease; and chronic appearing central and right paracentral inferior disc extrusion at T12-L1 resulting in canal stenosis of a mild degree with no compromise of the conus. (Tr. at 20, 479-541) Having determined Claimant suffered from L5-S1 isthmic spondylolisthesis, on April 3, 2019, Dr. Hoyt performed a L5-S1 posterior lumbar interbody fusion and Gill procedure for the L5-S1 isthmic spondylolisthesis, which Claimant tolerated well; by April 15, 2019, Claimant was still restricted from lifting no greater than ten pounds, and was experiencing significant pain at the surgical site, however, Dr. Hoyt noted she was otherwise mobilizing well and had no new

neurologic symptoms. (Id.)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that during the last years of her husband's life, she alone provided him with assistance, including dressing, bathing, toileting, which included lifting and pulling on him on a regular basis. (Tr. at 45) If he had a seizure and hit the floor, Claimant would have to pick him up. (Tr. at 45-46) Claimant stated that at the time, her husband weighed 244 pounds and was 5'9" tall; Claimant weighs 209 pounds and is 5'1". (Tr. at 46) Claimant relies on relatives to help pay bills and to drive her to places. (Tr. at 46-47) Claimant lives alone. (Tr. at 57)

Claimant confirmed that she had back surgery in April 2019 for her pain, but she did not consider it a success because she can't sit for very long, and if she does, then she can't walk because her legs won't work. (Tr. at 50-51) She also stated that she can't stand to wash dishes and that her back still hurts "like it's breakin' in two." (Tr. at 51) Since the surgery, she only has pain running down on her right side, down into her foot; she admitted that she's doing much better with her left leg since the surgery. (Id.) She denied that physical therapy helped either before or after surgery. (Tr. at 52) She testified that she has good and bad days with pain, and on a good day she can get some of her housecleaning done, like running a sweeper, washing clothes and dishes, but it hurts her back to stand. (Tr. at 57) Usually, Claimant has bad days, five or six days out of the week, and she does nothing. (Id.) Claimant testified that she is unable to walk a block; she stated she is weak and her legs won't hold her up. (Tr. at 59)

Claimant also testified that she has problems with both feet, especially her left, which had been fused with titanium hardware; she had no time to have them treated while she was taking care

12

of her husband, though. (Tr. at 53) She also has problems with both shoulders, the right is worse than the left; they hurt mostly when she lays down. (Tr. at 53-54) She testified she has acid reflux and recurring UTI's. (Tr. at 54)

      Claimant testified that she has had depression for the last five years, and has depression every day for which she takes medication. (Tr. at 55) She denied that her depression caused her memory problems, but stated that she does have difficulty concentrating or staying focused. (Tr. at 55-56) She also has panic attacks about two to three days a week, sometimes lasting all day and night, and other times, just a couple of hours; she described them as shaking all over. (Tr. at 56) She testified that medication helps though. (Id.)  Claimant denied any side-effects from her medication. (Tr. at 58) She also takes medication to help her sleep and stated that sometimes it works, and other times it doesn't. (Id.) She is fatigued during the day, but does not take naps. (Tr. at 59)

      Claimant testified that when doing household chores she has to go at her own speed and take breaks; she stated she can't mow grass "because it cuts me in two" and she can't go to the grocery store because she can't lift or sit; she has relatives take her to the grocery store and they do the lifting for her. (Tr. at 59-60) She even has problems sitting because it makes her back stiff and it begins to hurt. (Tr. at 60) She spends most of her time with her phone; when she does run the sweeper or straighten up one room then she's "down and miserable" and is unable to do anything else for a while so she sits in a chair. (Tr. at 61-62) She can fix herself simple meals for lunch and dinner. (Tr. at 61) Claimant can take care of her own personal hygiene and toileting; she will do arts and crafts to keep occupied, but does not go to church, sporting events or clubs, just to doctor appointments and the grocery store every two weeks. (Tr. at 62-63)

Claimant testified that she could not work because she is unable to sit for long or stand, she stands a little at a time and uses her recliner to lay in most of the time because of pain. (Tr. at 63-64)

        Vocational Expert ("VE") Testimony:

In response to the ALJ's controlling RFC, supra, the VE testified that the individual would be capable of performing both light and sedentary exertional level jobs: for light work, the representative jobs garment bagger or routing clerk; for sedentary work, the representative jobs include table worker or inspector. (Tr. at 39-40) In response to questions from Claimant's attorney, the VE testified that an individual who missed two or more days of work per month or were off-task ten percent or more of the workday, the individual would not be able to maintain employment. (Tr. at 41)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

14

their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).[3] If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

## Analysis

As an initial matter, the undersigned notes that Claimant merely lists her numerous conditions and ailments found throughout the medical record, but at no time does she specify how these conditions, either singly or in combination, have affected her functioning.[4] Courts within this Circuit have long recognized that a diagnosis or medical condition is not necessarily disabling; there must be a showing of a related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (internal citation omitted). Further, Claimant also does not specify which impairment specifically meets or equals any Listing. As noted *supra*, Claimant bears the burden of proving she has an impairment or combination of impairments that meets or medically equals the severity of

---

[3] While the undersigned does not disagree with the Commissioner's position that Claimant has effectively waived any argument in support of her appeal for failure to develop same, save for conclusory remarks, the Court has a long-standing duty to scrutinize the record to determine if the Commissioner's final decision was rational remains paramount. (See ECF No. 17 at 7; citing Erline Co. S.A. v. Johnson, 440 F.3d 648, 653, n.7 (4th Cir. 2006) (a "conclusory remark" is "insufficient to raise on appeal any merits-based challenge"); Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152, n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); *accord* Sedghi v. PatchLink Corp., 440 F. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue."); Mays v. Berryhill, Case No. 2:17-cv-02084, 2018 WL 4494162, at *3, n.1 (S.D.W. Va. Aug. 29, 2018) (rejecting undeveloped argument as waived); Baker v. Colvin, Case No. 3:13-cv-20376, 2015 WL 5687544, at *5 (S.D.W. Va. Sept. 8, 2015) (finding undeveloped argument waived in Social Security appeal when the plaintiff failed to include any "legally sufficient explanation" to support her argument)). Regardless, for the reasons stated *infra*, Claimant's arguments, or lack of thereof, fail.

[4] Claimant asserts that she suffers from the following: obesity; osteoarthritis; status post left first MTP fusion and calcaneal bone auto graft; degenerative disc disease of the cervical spine; degenerative disc disease of the thoracic spine; lumbar spondylolisthesis (status post L5-S1 lumbar interbody fusion); sciatica; major depressive disorder; adjustment disorder; borderline intellectual functioning; panic disorder; acid reflux; recurrent urinary tract infections; and overactive bladder. (ECF No. 16 at 2-3) See, e.g., 20 C.F.R. § 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).")

Listing requirements; in any event, the ALJ observed that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. at 18)

<u>Consideration of the Record and Severe Impairments:</u>

As noted *supra*, Claimant conclusively asserts that the ALJ failed to give proper consideration to the medical evidence of record and to her testimony, rendering a flawed RFC assessment. (See ECF No. 16 at 5) Thus, it is necessary to recognize that the Regulations consider a "severe" impairment as one "which significantly limits your physical or mental ability to do basic work activities." <u>See</u> 20 C.F.R. § 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." <u>Id</u>. § 416.922(b). The Regulations provide examples of these activities: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and (6) dealing with changes in a routine work setting. <u>Id</u>. Contrariwise, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984); <u>see also</u> 20 C.F.R. § 416.922(a) (an impairment or combination of impairments is not severe if it does not significantly limit an individual's physical or mental ability to do basic work activities).

The Regulations further provide:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered

separately, would be of sufficient severity.

See 20 C.F.R. § 416.923(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on Claimant's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

At the second step in the sequential evaluation process, the ALJ not only acknowledged and determined that most of Claimant's proposed list of impairments were severe, *supra*,[5] but also considered her allegations that she is also disabled due to acid reflux, an overactive bladder and recurrent urinary tract infections. (Tr. at 16) Regarding her acid reflux, the ALJ noted that Claimant is on medication for acid reflex and "it is under control"; that a November 2018 colonoscopy and esophagogastroduodenoscopy were both normal; that Claimant did not testify to severe symptoms related to this impairment; accordingly, he determine it not severe. (Tr. at 16, 457-478) With respect to her alleged recurrent urinary tract infections, the ALJ noted that again in November 2018, a treatment note did not indicate urinary tract infection and Claimant was reminded to use measures to prevent them; the ALJ noted that not until May 2019 did Claimant have another urinary tract infection. (Tr. at 16, 419-426, 1867-1870) Because Claimant's alleged urinary tract

---

[5] See also fn.4, *supra*; ECF No. 16 at 2-3.

infections did not last the requisite 12 months, the ALJ considered this not a severe impairment. (Tr. at 16) Regarding her overactive bladder, the ALJ acknowledged the record supported this diagnosis, but also recognized that Claimant drank a lot of water, thus it was not a severe impairment. (Id.)

Having determined which impairments were severe and non-severe, the ALJ also considered Claimant's testimony and subjective complaints concerning her physical impairments: that her back pain did not improve after surgery; that she cannot tolerate sitting for a very long time, and if she sits for very long, she cannot walk because her legs "will not work" and she "has to move them around a little bit to get them to go"; that prior to surgery, she had pain running down both legs, and after surgery, the pain only runs down the right leg; that her pain is currently a six out of ten on the pain scale; that she has pain in her shoulders and has trouble reaching; that physical therapy after surgery did not help; that she's in pain every day; that she has good and bad days, where good days she can clean house, but bad days she does nothing; that her sleep is disrupted due to pain, but she does not nap during the day; that she can walk less than a block; that she is weak and her legs will not hold her up; that "[t]hey want her to do physical therapy and get strength back in foot but it is hard to do" because it hurts her legs; that she doubts she can stand thirty minutes; that she cannot go to the grocery store; that lifting hurts; that she had surgery on her left foot and was recuperating; that she has pain in her left foot after metal hardware was implanted, and also trouble with her right foot. (Tr. at 19)

The ALJ also considered Claimant's symptoms related to her mental impairments: that she received treatment from Marshall Psychiatry; that she suffered from depression for the last five years; that she takes medications for these issues, and they do help; that she has no memory

difficulties, but does have trouble with concentration and focus; that she suffers from anxiety; that she cannot sit or stand due to her anxiety and just wants to be on the move; that she tries to keep herself occupied; that she has anxiety on average two to three days a week, and that it lasts all day and night; and that she attended special education classes in school, and after high school no formal training. (Id.)

In addition to Claimant's statements in her Function Report (Tr. at 24, 238-248)[6] and testimony, the ALJ considered the voluminous treatment records, which showed that her gait was stable or normal, that she had decreased range of motion in her back and shoulders at times, that her strength was typically normal, and that her back pain improved after surgery. (Tr. at 20-22, 410-417, 427-456, 457-478, 479-541, 662-811, 604-661, 1815-1843, 1958-1985, 2004-2063)[7] The ALJ also discussed the treatment records concerning Claimant's mental impairments, again noting that she attended special education classes in school; that her full-scale IQ at age 18 was 72; that she attended outpatient counseling biweekly; that her recent and remote memory were found to be below average at the consultative examination with Ms. Wilson; and that other mental status

---

[6] Claimant submitted her Function Report in November 2017; the ALJ noted she reported "she could dress, bathe, care for her hair, shave, feed herself and use the bathroom all unassisted. She could make a simple meal. She could clean, wash clothes and iron. She could mow grass and weed eat. She could grocery shop and handle her finances. She liked to watch TV and go outside."

[7] The ALJ referenced Dr. Beard's findings from his consultative examination report; treatment records from Westmoreland Physical Therapy dated December 18, 2018 through January 28, 2019; progress notes from Douglas Hensen, M.D., of Marshall Health dated November 8, 2018 through February 26, 2019; progress notes from Alastair Hoyt, M.D., of Marshall Health dated September 10, 2018 through April 15, 2019; hospital records from Cabell Huntington Hospital dated February 23, 2018 through June 5, 2019; treatment records from Midland Behavioral Health dated August 17, 2018 through April 26, 2019; office treatment records from OnCall Health & Aesthetic dated May 24, 2019 through August 23, 2019; office treatment records from Marshall Health dated May 20, 2019 through September 3, 2019; and hospital treatment records from Cabell Huntington Hospital dated June 26, 2019 through September 3, 2019. (See also, e.g., Tr. at 391, 407, 412, 460, 464, 476, 548, 553, 557, 561, 1008, 1108, 1851, 1853, 1872, 1954) (normal, stable and/or steady gait); Tr. at 413-414, 427, 532, 608, 613, 622, 689, 1008, 1823, 1829 (variable range of motion findings); Tr. at 414, 495, 518, 524, 608, 617, 636, 967, 1810, 1823, 1843, 1963 (normal muscle strength); Tr. at 543, 1960, 1963-1964, 2027 (improvement after surgery)).

examinations recorded mood disturbances but were otherwise largely normal, including with respect to memory and concentration. (Tr. at 22-23, 391-397, 398-409, 542-603, 457-478, 1871-1903)[8]

In addition to the treatment evidence, the ALJ considered the prior administrative findings, which limited Claimant to light work with postural and environmental limitations, which the ALJ found persuasive because they were not only consistent with the objective medical evidence and the treatment records, but also supported by this evidence as well. (Tr. at 24, 83-85, 99-101) Nevertheless, the ALJ determined more restrictive limitations were warranted to account for Claimant's back and foot impairments, including a sit/stand option at one-hour intervals to accommodate Claimant's complaints of back pain from "prolonged standing" (Tr. at 24, 1960) as well no operation of foot controls with the left lower extremity to accommodate her left foot impairment.

The ALJ also considered a February 1992 medical opinion from Thompson Chiropractic Clinic to excuse Claimant from physical education classes – the ALJ determined this opinion was not persuasive because it was issued over 17 years prior, did not relate to the relevant period, and did not provide any functional limitations. (Tr. at 24, 369-370)

The ALJ discussed an April 2019 opinion from Claimant's treating source, Dr. John Cornell, who opined that Claimant could not bend, twist, or lift anything greater than ten pounds and could not drive a motor vehicle for two weeks. (Tr. at 24-25, 689) The ALJ noted this opinion

---

[8] The ALJ referenced Ms. Wilson's findings from her consultative examination report; office treatment records from University Psychiatric Associates (Marshall Psychiatry and Behavioral Medicine) dated January 4, 2018 through March 15, 2018; progress notes from University Psychiatric Associates dated May 16, 2018 through April 25, 2019; progress notes from Dr. Henson; and office treatment records from Marshall Psychiatry and Behavioral Medicine dated March 28, 2019 through July 25, 2019. (See also, e.g., Tr. at 401, 407, 544, 548, 555, 557, 561-562, 567, 570, 573, 577, 581, 583, 585, 589, 1883, 1896) (mostly normal mental status examinations)).

concerned a temporary restriction after Claimant's back surgery, and there was no indication that Dr. Cornell intended this to be a permanent limitation; thus, the ALJ found this opinion to be not persuasive, as it was not consistent with the treatment history or supported by the objective medical evidence. (Id.)

The ALJ then considered the prior administrative findings from the state agency psychologists, who found Claimant could perform simple routine work and/or one- to three-step tasks in a work environment that did not have production quotas or require frequent changes in tasks or work settings. (Tr. at 25, 85-87, 101-103) The ALJ found these opinions persuasive, noting their consistency with a record that showed borderline intellectual functioning, but largely normal mental examinations. (Id.) With respect to Claimant's treating psychiatrist, Dr. Lilly, the ALJ found his letter summarizing Claimant's mental conditions not persuasive, as it provided no functional limitations caused by her mental impairments.[9] (Tr. at 25, 418)

It is clear from the aforementioned summary that despite Claimant's conclusory argument that the ALJ failed to properly consider the evidence of record, the ALJ provided a thorough review of the voluminous record in support of his RFC assessment. Accordingly, the undersigned **FINDS** Claimant's contention to this extent lacks merit.

The RFC Assessment and Hypothetical Questions to the Vocational Expert:

---

[9] Claimant does not assert that the ALJ herein failed to properly evaluate the opinion evidence, nevertheless, to the extent that any argument can be construed as such, it is necessary to appreciate that the applicable Regulations provide that a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §416.913(a)(5). In this case, it is apparent that the ALJ properly applied Section 416.920c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; further, with respect to Dr. Lilly's opinion-letter, there is no dispute that it can be construed as a "medical opinion" pursuant to the Regulations' definition.

As noted *supra*, Claimant also asserts that the ALJ's RFC determination is flawed, essentially because he should have found her disabled. (ECF No. 16 at 5)

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. § 416.945(a). The RFC determination is an issue reserved to the Commissioner. Id. § 416.946(c).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted); see also Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC.").

To the extent that Claimant is arguing that the RFC assessment is not supported by substantial evidence, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)). Instead, an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ provided a comprehensive review of the record

evidence, which included Claimant's testimony and subjective statements, her activities of daily living, the objective medical findings, her treatment history, and the medical opinion evidence. (Tr. at 19-25) Despite Claimant's summary conclusion otherwise, the ALJ accommodated Claimant's credibly established limitations resulting from her impairments in the hypotheticals to the vocational expert by restricting her as provided in the controlling RFC, *supra*. (Tr. at 18, 26)

Claimant also asserts that the ALJ "should have accepted the testimony of the Vocational Expert who testified that [Claimant] would not be retained by an employer if she was absent from work two (2) or more days per month or was off-task more than 10% of the normal workday", because this is corroborated by her own testimony (ECF No. 16 at 5, citing Tr. at 41). Contrary to Claimant's suggestion, this Circuit has long since held that hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As stated above, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. See SSR 96-8p, 1996 WL 3741784, at *7. While Claimant asserts that the ALJ should have adopted the VE's testimony with respect to her absenteeism or being off-task, it is clear that the ALJ was not obligated to accept this portion of the VE's testimony; indeed, there is no indication from the overall record that supports such limitations. Accordingly, the undersigned **FINDS** that the VE's responses to the ALJ's controlling hypothetical question(s) were supported by substantial evidence, and further **FINDS** that the ALJ did not err by not adopting assumed limitations that were not supported by the record.

Although Claimant advocates for an alternate decision, as already stated herein, such are matters necessarily involving the resolution of conflicts in the evidence of record, and are evidentiary findings within the purview of the ALJ. In short, though Claimant may disagree with

the ALJ's determination that she could perform light exertional work with certain limitations, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7.

In short, the ALJ's narrative of the record included the objective medical evidence, such as imaging and examination findings, as well as the other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and the ultimate determination that Claimant remained capable of performing light work provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at [her] conclusions" therefore remand is not necessary. Mascio, 780 F.3d at 637. Accordingly, the undersigned **FINDS** that the ALJ's RFC assessment as well as the controlling hypothetical questions to the vocational expert were based upon substantial evidence.

Finally, the undersigned further **FINDS** that the ALJ's analysis of the evidence of record, and the final decision denying Claimant's applications for benefits are also supported by the substantial evidence.

## **Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 16), **GRANT** the Defendant's request to affirm the decision below (ECF No. 17), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 7, 2021.



Omar J. Aboulhosn
United States Magistrate Judge